```
             UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION

UNITED STATES OF AMERICA      :
                              :    CRIMINAL ACTION
        v.                    :
                              :    NO. 1:06-CR-147-CC
SYED HARIS AHMED and          :
EHSANUL ISLAM SADEQUEE        :    (SUPERSEDING)
```

**GOVERNMENT'S REVISED MOTION FOR A PROTECTIVE ORDER FOR CLASSIFIED MATERIALS, PURSUANT TO 18 U.S.C. APP. III (CIPA) SECTION 3**

The United States, through its counsel, David E. Nahmias, United States Attorney for the Northern District of Georgia, and Katherine B. Monahan and Robert C.I. McBurney, Assistant United States Attorneys, and Alexis Collins, Trial Attorney, Counterterrorism Section, United States Department of Justice, hereby moves the Court for entry of a protective order for classified materials, pursuant to Section 3 of the Classified Information Procedures Act, 18 U.S.C. App. III § 3.[1]  The United States respectfully requests that the Court issue the Protective Order For Classified Materials attached hereto as Exhibit 1 (hereinafter "Protective Order") to prevent the unauthorized disclosure or dissemination of any classified national security materials and information which may be reviewed by or made available to, or are otherwise in the possession of, the defense in this case.

---

[1] The Government previously filed a similar motion (Doc 33) but has since superseded the indictment and added a defendant, necessitating this revised motion.

The proposed Protective Order guards against the unauthorized and unnecessary disclosure of classified information by: (1) establishing procedures for the handling of classified information by any Court personnel, member of the defense, or other individuals who may be permitted access to classified documents or information in connection with this case, and the storage and maintenance thereof; and (2) setting forth standards and procedures that restrict access to, and the disclosure of, classified information to persons who have the appropriate security clearance and an actual need to know the information, and who agree in writing to abide by the terms and procedures of the Order.

All of the parties to this case have met several times to discuss the proposed order. While disagreement remains as to some of its terms, the proposed order as submitted to the Court reflects a collaborative effort to bridge some of the differences that have arisen as the parties have discussed the realities of handling and working with classified information.

## LEGAL STANDARD

The Classified Information Procedures Act ("CIPA"), codified at 18 U.S.C. App. III, governs how federal district courts address and process pretrial matters concerning the discovery, admissibility and use of classified information in criminal cases. United States v. Baptista-Rodriquez, 17 F.3d 1354, 1363 (11th Cir. 1994). CIPA's fundamental purpose is to "harmonize a defendant's

right to obtain and present exculpatory material [at] trial and the Government's right to protect classified material in the national interest." United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996). By its plain terms, CIPA "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." United States v. Apperson, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006).

**A.    Section 3 of CIPA**

Section 3 of CIPA and Rule 16(d)(1) of the Federal Rules of Criminal Procedure require the district court to issue a protective order to guard against the unauthorized disclosure of classified information.[2]  Section 3 of CIPA states:

> Upon motion of the United States, the court **shall** issue an order to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States.

18 U.S.C. App. III § 3 (emphasis added). Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," Pappas, 94 F.3d at 801, as well as to supplement the district court's

---

[2] "Classified information" is defined as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security and any restricted data, as defined in . . . the Atomic Energy Act of 1954."  18 U.S.C. App. III § 1(a).  "National security" means the national defense and foreign relations of the United States.  Id.

3

authority under Rule 16(d)(1) to issue protective orders in connection with the discovery process.[3] In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the Government discloses classified information to a defendant in connection with a prosecution, e.g. Brady and Jencks material." Id.

**B. Provisions of a Section 3 Protective Order**

    1. General Categories of Provisions Established in the Legislative History

The legislative history of CIPA broadly lists some of the provisions that may be included in a protective order to ensure that classified information is not improperly revealed and disseminated. See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299 (96th Cong. 2d Sess.). Although the details of each order are to be fashioned by the district court according to the circumstances of the particular case, Congress contemplated that protective orders issued under CIPA would include, but need not be limited to, provisions:

    (1) prohibiting the disclosure of the information except as authorized by the court;

    (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed;

---

[3] Rule 16(d)(1) provides in relevant part that "at any time the court may, for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."

    (3)    requiring controlled access to the material during normal business hours and at other times upon reasonable notice;

    (4)    requiring the maintaining of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense;

    (5)    [regulating] the making and handling of notes taken from material containing classified information; and

    (6)    authorizing the assignment of government security personnel and the provision of government storage facilities.

Id. In addition, the court may, in its protective order, forbid the disclosure "in any context" of classified information given to the defendant or his counsel, not just within the confines of the particular criminal case or proceeding. Id.; see also Pappas, 94 F.3d at 801 (stating that under CIPA "information conveyed by the government to the defendant in the course of pretrial discovery ... may be prohibited from disclosure, including public disclosure outside the courtroom").

    2.    Procedures Established by the Chief Justice of the United States Supreme Court

In addition to outlining some of the measures that may be included in a protective order, Congress set forth in CIPA a provision requiring "the Chief Justice of the United States, in consultation with the Attorney General, the Director of National Intelligence, and the Secretary of Defense, [to] prescribe rules establishing procedures for the protection against unauthorized disclosure of any classified information in the custody of the

5

United States [federal] courts." 18 U.S.C. App. III § 9(a). In compliance with Section 9(a), on February 12, 1981, Chief Justice Warren E. Burger adopted the "Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, By The Chief Justice of the United States For The Protection of Classified Information" (reprinted after CIPA § 9) (hereafter "Security Procedures").

The Security Procedures require district courts to follow certain steps in "all proceedings in criminal cases involving classified information." Security Procedures § 1. Such steps include inter alia: (1) the designation of a court security officer who is responsible to the court for "document, physical, personnel and communications security" (id. § 2);[4] (2) the establishment of secure quarters in which to hold in camera proceedings related to classified information and for the custody and storage of classified information (id. §§ 3, 7); and (3) maintenance of a control and accountability system for all classified information received by or transmitted from the court (id. § 9). The Security Procedures also authorize district courts to issue protective orders concerning arrangements for access to classified information in the custody of the court by court personnel and persons acting for the defense. Id. § 8(a).

---

[4] The court security officer, having been appointed by the court, is bound by the same ethical and confidentiality standards that bind all Court personnel. See United States v. Yunis, 867 F.2d 617, 621 n.8 (D.C. Cir. 1989).

6

3.  <u>Standards for Obtaining Access to Classified Information</u>

In addition to the legislative history and the Security Procedures, another regulation upon which federal courts have relied when fashioning protective orders issued under Section 3 of CIPA is Executive Order 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995), <u>as amended by</u> Executive Order 13,292, 68 Fed. Reg. 15,315 (Mar. 25, 2003).  Executive Order 12,958, as amended, establishes a uniform system for classifying, safeguarding and declassifying national security information.  Under this system, a person may only lawfully obtain access to classified information if such person: (a) has received the relevant level of security clearance for access to such information; (b) has signed an approved nondisclosure agreement; and (c) actually needs to know the information.  Exec. Order 13,292 Pt. 4 § 4.1, 68 Fed. Reg. 15,315, 15,324 (Mar. 25, 2003).

These three conditions have routinely been included in protective orders issued pursuant to Section 3 of CIPA as the standard prerequisites which must be met by any person assisting in the preparation of the defense before such person may receive access to classified information belonging to the United States. <u>See</u>, <u>e.g.</u>, <u>United States v. Libby</u>, 429 F. Supp. 2d 18, 24 (D.D.C. Apr. 5, 2006) (citing Executive Order 12,958 as amended) (amended by <u>United States v. Libby</u>, 429 F. Supp. 2d 46 (D.D.C. May 3, 2006)); <u>United States v. Moussaoui</u>, Case No. CR. 01-455-A, 2002 WL

1987964, at *1 (E.D.V.A. Aug. 23, 2002); <u>United States v. Poindexter</u>, CRIM. No. 88-0080, 1988 WL 148597, at *2 (D.D.C. Apr. 15, 1988).

It is also well established that a protective order may require persons provided with access to classified national security information, including judicial personnel and persons acting for the defendant, to undergo a background investigation in order to obtain a security clearance. <u>See</u> <u>United States v. Smith</u>, 899 F.2d 564, 570 (6th Cir. 1990) (reversing a district court's denial of a protective order that required judicial personnel who might handle classified documents to undergo a background investigation and obtain a security clearance); <u>United States v. Al-Arian</u>, 267 F. Supp. 2d 1258, 1266-67 (M.D. Fla. 2003) (compelling defense counsel to submit applications for security clearance); <u>United States v. Bin Laden</u>, 58 F. Supp. 2d 113, 117-23 (S.D.N.Y. 1999) (same); Security Procedures ¶ 4 (prohibiting judicial personnel from obtaining access to classified information in court custody unless and until such persons have received security clearance and unless access to information is necessary for performance of official function). Even where members of the defense obtain a security clearance at the appropriate level, they are not entitled to review classified information absent a demonstrated need to know the information. <u>Libby</u>, 429 F. Supp. 2d at 24 (rejecting argument that the defendant, a former national

security official, and his counsel were entitled to review any and all classified information in case simply because they had a security clearance).

Finally, the district court is authorized to impose a protective order that specifically denies a defendant access to classified information absent special court approval. Federal courts have held that, to the extent that the defendant himself does not have a need to know classified information to effectively assist in his defense, a protective order issued pursuant to Section 3 of CIPA may prohibit defense counsel from disclosing to the defendant classified information that has been provided by the Government in discovery. See, e.g., Moussaoui, 2002 WL 1987964, at *1; United States v. Bin Laden, No. S(7) 98 CR. 1023 LBS, 2001 WL 66393, at *2-4 (S.D.N.Y. 2001); United States v. Rezaq, 156 F.R.D. 514, 524 (D.D.C. 1994) (vacated in part on other grounds in United States v. Rezaq, 899 F. Supp. 697 (D.D.C. 1995)).

## **ARGUMENT**

The United States respectfully requests entry of the proposed Protective Order attached as Exhibit 1 because issues involving classified information will be litigated in this case. This Protective Order establishes procedures for the submission of classified information to the Court; procedures for the storage, management and control of access to classified information that is submitted to the Court and/or made available to the defense; and

the standards by which, and conditions under which, access by the defense to such information may be granted. These provisions are necessary to adequately protect the classified information that may be submitted or produced in this case from unauthorized disclosure and in order to comply with applicable law and regulations.

First, the Protective Order designates a court security officer who will assist the Court in, among other things, establishing and maintaining a secure location for the storage and review of classified information, filing and maintaining pleadings containing classified information, making arrangements for background investigations for the purpose of obtaining security clearances for persons granted access to classified information by the Court, and monitoring and controlling access to such classified information. See Ex. 1. ¶¶ 9, 12-17, 22. These provisions are consistent with CIPA's legislative history and the Security Procedures promulgated by Chief Justice Burger, as described above, the latter of which specifically requires the appointment of a court security officer to handle such matters. See S. Rep. No. 96-823 at *6, 1980 U.S.C.C.A.N. at 4299; Security Procedures ¶ 2.

Second, the Protective Order sets forth the logistical and substantive conditions under which the defense may have access to classified information and regulates the disclosure of such information by the defense to other individuals. See, e.g., Ex. 1 at ¶ 11, 18-19. Each of the conditions is designed to protect the

Government's interest in preventing the unauthorized disclosure of classified information while permitting access by the defense to such information where necessary.

For example, the proposed Order states that defense counsel, defense employees, defense witnesses, or any other person assisting with the preparation of the defense may have access to classified information only if such person has: (1) received Government approval or obtained a Court order allowing access to such classified information based on a showing of an actual need to know the information; (2) obtained a security clearance at the level appropriate for access to the information; and (3) agreed to comply with the terms of the Protective Order by signing and submitting to the Court a Memorandum of Understanding.[5]  See id. ¶ 11.  This provision is necessary not only to ensure that access to classified information is provided consistently with applicable law, but also to prevent unnecessary disclosure of classified information at the outset.  See Bin Laden, 58 F. Supp. 2d at 121 ("[I]t is easier and more effective to prevent the release of classified information in advance than to attempt to undo the damage of unauthorized disclosures after the fact.").  Federal courts have approved protective orders under Section 3 of CIPA that contain similar provisions requiring defendants and defense teams to obtain

---

[5] A proposed Memorandum of Understanding is attached hereto as Exhibit 2.

security clearances, see, e.g., Al-Arian, 267 F. Supp. 2d at 1266-67; Bin Laden, 58 F. Supp. 2d at 117-23, requiring a need to know the classified information before access thereto is granted, see, e.g. Libby, 429 F. Supp. 2d at 24, and requiring execution of a Memorandum of Understanding, see, e.g., Poindexter, 1988 WL 148597, at *2.

Should defense counsel be granted access to classified information, the proposed Protective Order imposes certain restrictions on the subsequent dissemination of the classified information in order to prevent access by unauthorized persons. In general, the defense may not disclose classified information to any person who is not authorized for access to such information pursuant to the Protective Order, except for the Government or the Court and its cleared personnel. See Ex. 1 ¶ 19. In addition, the proposed Protective Order provides special protection against unauthorized disclosure by the defendant by denying the defendant himself – but not his counsel – access to classified information without additional order of the Court. See id. ¶¶ 11(d), 19(b).

Courts have authorized such limitations in other cases. See, e.g., Moussaoui, 2002 WL 1987964, at *1; Rezaq, 156 F.R.D. at 524. Indeed, the circumstances present in the instant case are similar to those present in United States v. Rezaq, where the district court entered a protective order that authorized defense counsel access to classified information, but not the defendant himself

without an additional order of the Court.  Id., 156 F.R.D. at 524. In United States v. Moussaoui, Case No. CR. 01-455A, 2002 WL 1987964 (E.D.V.A. Aug. 23, 2002), the district court entered a protective order under CIPA denying access by the defendant to certain classified information.[6]  Id. at *1.  Likewise, the district court in United States v. Bin Laden entered a CIPA protective order that effectively prevented the defense counsel from sharing classified documents with the defendant and held that such an order was constitutional under the Fifth and Sixth Amendment.  Bin Laden, 2001 WL 66393, at *2-7.

The United States submits that the Defendants in this case should not be granted access to any classified information that is made available to defense counsel absent specific approval by the Court.  As in Rezaq, Moussaoui and Bin Laden, these Defendants have never had, nor are likely ever to have, a security clearance and there is no reason to believe that the Defendants can be entrusted with national secrets.  Moussaoui, 2002 WL 1987964, at *1; Bin Laden, 2001 WL 66393, at *2; Rezaq, 156 F.R.D. at 524; cf. Libby, 429 F. Supp. 2d at 24.  To the contrary, there is a very real risk that the Defendants would disclose the classified information

---

[6] Even in United States v. Libby, the court recognized that the defendant, a former national security official, was not entitled to view every classified document associated with the case.  Id., 429 F. Supp. 2d at 24.  Rather, the defendant could only view classified documents that were within the level of his security clearance and that he had a need to know.  Id.

13

without authorization. The Defendants have direct and indirect ties to other individuals who have engaged in international terrorism activities. Moreover, after defendant Ahmed was questioned by the FBI in early 2006 about his activities and was asked not to disclose the fact that he was being interviewed, he promptly informed co-defendant Sadequee in Bangladesh of the FBI's interest and warned him not to return to the United States. This conduct demonstrates the likelihood of unauthorized disclosure of sensitive information by the Defendants.[7]

Should either Defendant disclose classified information to the public or other conspirators, the national security of the United States would suffer immediate and significant damage that could not be cured or alleviated by any post-disclosure sanction or penalty. See Bin Laden, 58 F. Supp. 2d at 121. The Protective Order, which limits the Defendants' access to classified information and the disclosure of classified information to the Defendants by their counsel, avoids this harm without prejudicing the defense.

---

[7] In upholding the prohibition on disclosure of classified information to the defendants, the Bin Laden court implicitly accepted the Government's argument that the prohibition was necessary because the defendants had no prior access to classified information and would never obtain security clearance, and to avoid harming ongoing investigations into the activities of the defendants' associates and cooperative law enforcement and intelligence relationships with other countries. See Bin Laden, 2001 WL 66393, at *2. The same concerns justify withholding classified information from the Defendants in this case absent specific court approval.

The Defendants, however, are not entirely precluded from having access to classified information, assuming such a request can be adequately justified. To the extent that a Defendant is able to demonstrate an actual need to know and see particular classified information, the proposed Protective Order establishes appropriate procedures for requesting such access. Pursuant to Paragraph 19(b) of the Protective Order, the defense may seek authorization from the Court to disclose classified information to the Defendant by establishing a particularized need to know; while the Government may oppose such disclosure, the power to order access to the Defendant ultimately rests with the Court. This mechanism is more than adequate to protect the Defendants' constitutional rights. See, e.g., Rezaq, 156 F.R.D. at 524-25 n.20 (citing United States v. Herrero, 893 F.2d 1512, 1524-27 (7th Cir. 1990)).

\*   \*   \*

**CONCLUSION**

For the foregoing reasons, and pursuant to CIPA, the Chief Justice's Security Procedures, as well as federal regulation, the United States respectfully requests the Court enter the proposed Protective Order, attached hereto as Exhibit 1, and Memorandum of Understanding, attached hereto as Exhibit 2.

Respectfully submitted,

/s/DAVID E. NAHMIAS
UNITED STATES ATTORNEY
GA Bar No. 534106


/s/KATHERINE MONAHAN
ASSISTANT UNITED STATES ATTORNEY
GA Bar No. 045737


/s/ROBERT C.I. McBURNEY
ASSISTANT UNITED STATES ATTORNEY
GA Bar No. 481070


/s/ALEXIS L. COLLINS
TRIAL ATTORNEY CTS-DOJ
Washington, D.C. Bar No. 474599

600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
V: 404-581-6000
F: 404-581-6181

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the persons listed below a copy of the foregoing GOVERNMENT'S REVISED MOTION FOR A PROTECTIVE ORDER FOR CLASSIFIED MATERIALS, PURSUANT TO 18 U.S.C. APP. III (CIPA) SECTION 3 by electronic delivery:

>John R. Martin
>Martin Brothers, P.C.
>202 Grant Building
>44 Broad Street NW
>Atlanta, GA 30303
>(Counsel for defendant Ahmed)
>
>Donald F. Samuel
>Garland, Samuel, & Loeb, P.C.
>3151 Maple Drive, NE
>Atlanta, GA 30305
>(Co-counsel for defendant Sadequee)
>
>Stephanie Kearns
>Federal Defender Program, Inc.
>1700 The Equitable Building
>100 Peachtree Street
>Atlanta, GA 30303
>(Co-counsel for defendant Sadequee)

This 30th day of August, 2006.

>_____
>/s/ROBERT C.I. McBURNEY
>ASSISTANT UNITED STATES ATTORNEY